ACCEPTED
03-15-00415-CV
6108044
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/21/2015 3:40:03 PM
JEFFREY D. KYLE
CLERK

## NO. 03-15-00415-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/21/2015 3:40:03 PM
JEFFREY D. KYLE
Clerk

# In the Court of Appeals
# For the Third Judicial District
# Austin, Texas

**SANDRA KAY HARGROVE,**

Appellant,

**v.**

**GARY M. HARGROVE**

Appellee.

**On Appeal from the 27th Judicial District Court,
Cause No. 186,223-A**

## APPELLANT'S BRIEF

**RAY & WOOD**
**Doug W. Ray**
**State Bar No. 16599200**
**2700 Bee Caves Road**
**Austin, Texas 78746**
**(512) 328-8877 (Telephone)**
**(512) 328-1156 (Telecopier)**
**dray@raywoodlaw.com**
**ATTORNEYS FOR APPELLANT**

# IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties, and the names and addresses of all counsel of record:

**Appellant**
Sandra Kay Hargrove

**Counsel for Appellants**
Doug W. Ray (State Bar No. 16599200)
Ray & Wood
2700 Bee Caves Road, Suite 200
Austin, Texas 78746
(512) 328-8877 (Telephone)
(512) 328-1156 (Telecopier)
dray@raywoodlaw.com

Andrea Sheinbein (State Bar No. 24005101)
The Law Office of Andrea Sheinbein, PC
213-A West 8th Street
Georgetown, Texas 78626
(512) 686-3809 (Telephone)
(512) 686-3816 (Telecopier)
andrea@sheinbeinlaw.com

**Appellee**
Gary M. Hargrove

**Counsel for Appellee**
Robert O. Harris, III (State Bar No. 09098800)
Law Office of Robert O. Harris, III
404 North Main
Belton, Texas 76513
(254) 690-4800 (Telephone)
(254) 939-2121 (Telecopier)
buck@buckharrislaw.com

# TABLE OF CONTENTS

Identity of Parties and Counsel ........................................ i

Table of Contents ........................................ ii

Index of Authorities ........................................ iii

Statement of the Case ........................................ v

Issues Presented ........................................ vi

Statement of Facts ........................................ 1

Summary of the Argument ........................................ 4

Argument ........................................ 6

    I. Standard of Review ........................................ 6

    II. The Divorce Decree Awarded Sandra Spousal
       Maintenance ........................................ 7

    III. Sandra is Still Owed Spousal Maintenance ........................................ 10

Prayer ........................................ 14

Appellate Rule 9.4(i)(3) Certificate of Compliance ........................................ 15

Certificate of Service ........................................ 16

Appendix ........................................ 17

# INDEX OF AUTHORITIES

**Cases**

*Ammann v. Ammann,*
    No. 03-09-00177-CV, 2010 WL 4260955 (Tex. App.—Austin Oct. 28, 2010,
    no pet.) .................................................................................................................9

*Anderson v. City of Seven Points,*
    806 S.W.2d 791 (Tex. 1991) .............................................................................6

*Bennett v. Grant,*
    460 S.W.3d 220 (Tex. App.—Austin 2015, pet. filed) ..................................6

*Cadle Co. v. Regency Homes, Inc.,*
    21 S.W.3d 670 (Tex. App.—Austin 2000, pet. denied) ...............................11

*Cain v. Bain,*
    709 S.W.2d 175 (Tex. 1986) .............................................................................7

*City of Austin v. Whittington,*
    384 S.W.3d 766 (Tex. 2012) .............................................................................7

*Ex parte Gorena,*
    595 S.W.2d 841 (Tex. 1979) .................................................................... 10, 11

*Hagen v. Hagen,*
    282 S.W.3d 899 (Tex. 2009) .............................................................................8

*HealthTronics, Inc. v. Lisa Laser USA, Inc.,*
    382 S.W.3d 567 (Tex. App.—Austin 2012, no pet.) ......................................7

*Holland v. Holland,*
    357 S.W.3d 192 (Tex. App.—Dallas 2012, no pet.) .......................................9

*Leasing Serv. Corp. v. Double C Coal Co.,*
    817 F.2d 105, 1987 WL 37258 (6th Cir. 1987) ................................................8

*Matrix, Inc. v. Provident Am. Ins. Co.,*
    658 S.W.2d 665 (Tex. App.—Dallas 1983, no writ) ......................................11

*Milligan v. Niebuhr,*
    990 S.W.2d 823 (Tex. App.—Austin 1999, no pet.) ........................................8

*Ray v. Farmers' State Bank,*
    576 S.W.2d 607 (Tex. 1979) ...............................................................................7

*Seasha Pools, Inc. v. Hardister,*
    391 S.W.3d 635 (Tex. App.—Austin 2012, no pet.) ....................................6, 7

*Southwestern Fire & Cas. Co. v. Larue,*
    367 S.W.2d 162 (Tex. 1963) .............................................................................11

*Thompson v. Thompson,*
    500 S.W.2d 203 (Tex. Civ. App.—Dallas 1973, no writ) ...............................8

*Ware v. State Dept. of Soc. & Health Services,*
    157 Wash. App. 1071 (2010) ...........................................................................12

*Waste Mgmt. of Texas, Inc. v. Texas Disposal Sys. Landfill, Inc.,*
    434 S.W.3d 142 (Tex. 2014) ...............................................................................6

**Statutes**

TEX. FAM. CODE § 8.059(a)(2) ...............................................................................11

## STATEMENT OF THE CASE

Appellant filed a petition to enforce her divorce decree against Appellee for 1) contempt and an income withholding order for his failure to pay the full amount of ordered spousal maintenance, 2) contempt for his failure to pay the full amount of money awarded from an IRA, 3) fraud, 4) constructive fraud and 5) breach of fiduciary duty/constructive trust. (CR 1:79-89). Appellee filed a general denial and asserted the affirmative defense of statute of limitations. (CR 1:92-93). After a two-day bench trial the trial court signed a take-nothing judgment for Appellee on April 7, 2015. (CR 1:98-100; App. 1). Appellant filed a request for findings of fact and conclusions of law (CR 1:101) and the trial court filed its findings and conclusions. (CR 1:147-48).

# ISSUES PRESENTED

ISSUE 1:    The trial court erred by concluding that the divorce decree awarded contractual alimony.

ISSUE 2:    The trial court erred by finding that all ordered spousal maintenance payments had been paid.

## STATEMENT OF FACTS

After forty-three years of marriage Appellee Gary M. Hargrove ("Gary") filed a petition for divorce from his wife, Appellant Sandra Kay Hargrove ("Sandra"). (RR 2:3; 2nd Supp. CR 1:3). The Agreed Final Decree of Divorce provided:

> Spousal Maintenance (Alimony)
>
> The Court finds that Petitioner has agreed to provide Spousal Maintenance to Respondent. IT IS THEREFORE ORDERED that Spousal Maintenance is paid as follows . . . GARY M. HARGROVE shall pay to SANDRA KAY HARGROVE the amount of $625.00, beginning thirty days after this Decree of Divorce is signed by the Court and continuing on the same day of each month thereafter for a period of thirty-six months.

(2nd Supp. CR 1:6-7)

Claiming that she had not received all of the $22,500.00 in spousal maintenance ordered, Sandra filed an original petition for contempt seeking the unpaid maintenance payments. (CR 1:8-11). During discovery Sandra received from Gary carbon copies of checks shown to be written for maintenance payments along with some deposit slips, cancelled checks and signed receipts for maintenance payments. (RR 2:47). Sandra also had available her own bank statements from December 2002 forward showing those maintenance payments deposited into her account. (RR 3:25-26).

1

Using this information Sandra created a detailed review of these documents that was admitted without objection. (P. Ex. 6:1-5; RR 3:29). Under this review the documents showed proof of maintenance payments through a deposit slip, a cancelled check or a signed receipt for cash of only $2,875.00 in 2001, $2,075.00 in 2002,[1] $4,687.00 in 2003, $4,175.00 in 2004 and $1,285.00 in 2005. (P. Ex. 6:1-5). Together these sums add up only to $15,097.00,[2] which is $7,403.00 less than the amount the court ordered Gary to pay in spousal maintenance. Sandra testified that she had received $7,403.00 less in spousal maintenance from Gary than he was ordered to pay her. (RR 2:52-53).

Gary did not dispute any of the information regarding the check carbon copies, deposit slips or signed cash receipts that Sandra put into evidence pertaining to the spousal maintenance payments. Rather, Gary simply testified that he had reviewed all of the check carbon copies that

---

[1] The documents showed deposits into Sandra's account from Gary's IRA of $990.00 in November 2001 and $895.35 in January 2002. (P. Ex. 6:1-2). Because Sandra was entitled to receive 50% of this IRA by the terms of the divorce decree, these deposits do not constitute payment of spousal maintenance. (2nd Supp. CR 1:5). Also, the calculation for 2002 contains a computational error and says $2,025.00 where it should say $2,075.00. (P. Ex. 6:2).

[2] The exhibit also shows deposits made into Sandra's account after 2005, but Gary testified that he made his last spousal maintenance payment in 2005 and any funds provided after 2005 would have been "when she borrowed money." (RR 3:36, 45).

they had supplied to Sandra's counsel and that he believed that they added up to the correct amount. (RR 3:34-35). Gary did not introduce his own recap or reconciliation of the documents he had turned over in discovery, or any other exhibit, but simply testified that although he had not paid the spousal maintenance timely, he believed he had ultimately paid all that was owed. (RR 3:44-45, 52). This included a $340.00 cash payment that he claims he made to Sandra without any receipt or evidence that she received it (RR 3:35, 46), which payment Sandra denied receiving. (RR 3:59).

After a bench trial the trial court signed a judgment stating that the spousal maintenance in the Agreed Final Decree of Divorce constituted contractual alimony and that Gary had paid all contractual alimony that was due. (CR 1:98-100, App. 1:1-3). The trial court repeated these as findings in its findings of fact. (CR 1:147-48, App. 2:1-2, FOF 5).

## SUMMARY OF THE ARGUMENT

Sandra and Gary signed an agreed divorce decree containing a very simple and unequivocal provision stating that he had agreed to provide her with "Spousal Maintenance" and that such "Spousal Maintenance" would be paid at $625.00 a month for three years. The words "contractual alimony" appear nowhere in the decree, although the term "Spousal Maintenance" is also defined as "Alimony" for shorthand in the decree.

There is nothing ambiguous about the decree's award of spousal maintenance to Sandra. When an unambiguous agreed decree provides for spousal maintenance, the court's have no basis for simply declaring that it is contractual alimony instead. In this case the parties unambiguously stated that Gary owed Sandra spousal maintenance and the trial court's conclusion to the contrary is in error and must be reversed.

The trial court's finding that Gary had paid all $22,500 in spousal maintenance that was due under the decree is also in error and must be reversed. Gary turned over all the documents relating to his spousal maintenance payments and without objection or disagreement Sandra accounted for each carbon copy of every check, each deposit slip, each cancelled check and each signed receipt for a cash payment. There was

4

only $15,097.00 in spousal maintenance payments that were supported by any evidence, because carbon copies of checks are not evidence of payment. Moreoever, despite Gary's testimony that the carbon copies of the checks added up to the correct amount, the undisputed evidence is that even if the carbon copies were sufficient evidence of payment, the total amount of payments would still only equal $19,667.00. The evidence introduced at trial is neither legally nor factually sufficient to support the trial court's finding that Gary paid all the spousal maintenance due under the decree.

## ARGUMENT

### I.     STANDARD OF REVIEW

"Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon questions." *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex. 1991); *Seasha Pools, Inc. v. Hardister*, 391 S.W.3d 635, 639 (Tex. App.—Austin 2012, no pet.). Accordingly, a "trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer." *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Hardister*, 391 S.W.3d at 639.

"A party will prevail on its legal-sufficiency challenge of the evidence supporting an adverse finding on an issue for which the opposing party bears the burden of proof if there is a complete absence of evidence of a vital fact or if the evidence offered to prove a vital fact is no more than a scintilla." *Waste Mgmt. of Texas, Inc. v. Texas Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014); *Bennett v. Grant*, 460 S.W.3d 220, 234 (Tex. App.—Austin 2015, pet. filed). "When a party attacks the factual sufficiency of the evidence on an adverse finding on an issue upon which the other party had the burden of proof," the court must "consider and

6

weigh all the evidence, and . . . set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong." *HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 581-82 (Tex. App.—Austin 2012, no pet.) (citing *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)).

Courts "review conclusions of law de novo." *City of Austin v. Whittington*, 384 S.W.3d 766, 788 (Tex. 2012); *Hardister*, 391 S.W.3d at 639. However, "a trial court's designation of items as findings of fact or conclusions of law is not controlling on appeal, and [the appellate court] may treat the court's ruling as a factual finding or legal conclusion regardless of the label used." *Hardister*, 391 S.W.3d at 640 (citing *Ray v. Farmers' State Bank,* 576 S.W.2d 607, 608 n. 1 (Tex. 1979)).

## II. THE DIVORCE DECREE AWARDED SANDRA SPOUSAL MAINTENANCE

The trial court concluded that the spousal maintenance awarded in the divorce decree was actually contractual alimony. (App. 2:2). Although labeled as a finding of fact, this is actually a conclusion of law and based upon a de novo review this Court should hold that this conclusion was in error.

Courts "interpret divorce decree language as [they] do other judgments of courts." *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009). "If the decree is unambiguous, the Court must adhere to the literal language used. If the decree is ambiguous, however, the decree is interpreted by reviewing both the decree as a whole and the record." *Id.* "Whether a divorce decree is ambiguous is a question of law." *Id.* at 901-02. For an "agreed decree of divorce [courts] interpret its meaning by the rules relating to the construction of contracts." *Milligan v. Niebuhr*, 990 S.W.2d 823, 825 (Tex. App.—Austin 1999, no pet.). As such, the "court is 'bound by the express stated intent of the parties as manifested within the four corners of the instrument itself.'" *Id.* (quoting *Thompson v. Thompson,* 500 S.W.2d 203, 207 (Tex. Civ. App.—Dallas 1973, no writ)).

The decree in this case is unambiguous and it clearly requires Gary to pay Sandra spousal maintenance, not contractual alimony. The heading to the section of the decree on spousal maintenance is entitled "Spousal Maintenance (Alimony)." (2nd Supp. CR 1:6). This shows that the parties intended the word "alimony" to be shorthand for "spousal maintenance" when used in the decree. *See Leasing Serv. Corp. v. Double C Coal Co., 817 F.2d 105, 1987 WL 37258, at *2 (6th Cir. 1987)* (unpublished table decision)

("The use of parentheses to enclose a shorthand term in apposition to a longer term is absolutely standard in both legal and non-legal writing. It is used in this opinion. It does not create ambiguity."). This also accords with how the two terms are used judicially. *See, e.g.,* *Ammann v. Ammann*, No. 03-09-00177-CV, 2010 WL 4260955, at *1 (Tex. App.—Austin Oct. 28, 2010, no pet.) (mem. op.) ("Before 1995, the award of post-divorce alimony or spousal maintenance was held to be impermissible under the statutes and public policy of Texas.").

The decree also states explicitly that "Petitioner has agreed to provide Spousal Maintenance to Respondent. IT IS THEREFORE ORDERED that Spousal Maintenance is paid as follows . . . ." (2nd Supp. CR 1:6). The parties to the decree could have just as easily used other words, such as "contractual alimony" to define what was being ordered, but they instead chose the precise term "spousal maintenance" and the term "contractual alimony" appears nowhere in the decree. These two terms are not interchangeable and it is error for the trial court to conclude that the decree's order for "spousal maintenance" is actually "contractual alimony." *See Holland v. Holland*, 357 S.W.3d 192, 199 (Tex. App.—Dallas 2012, no pet.) (holding that where agreed decree awarding contractual alimony also

9

provided for an income withholding order to collect the contractual alimony, the trial "court's Order of Income Withholding for Spousal Maintenance was not consistent with the divorce decree and constituted a material change in the decree" and was therefore in error).

Based upon the foregoing, Sandra respectfully requests the Court to hold that the trial court erred when it concluded that Gary's obligation to her was contractual alimony rather than spousal maintenance as specifically set out in the decree.

## III.   SANDRA IS STILL OWED SPOUSAL MAINTENANCE

Sandra sought to enforce the judgment for Gary's failure to pay the spousal maintenance she was owed through contempt and a wage withholding order. Although the decree was an agreed judgment, once "the agreement of the parties has been approved by the court and made a part of its judgment, the agreement is no longer merely a contract between private individuals but is the judgment of the court." *Ex parte Gorena*, 595 S.W.2d 841, 844 (Tex. 1979). As such, "'an agreed judgment is accorded the same degree of finality and binding force as a final judgment rendered at the conclusion of an adversary proceeding,' and . . . the agreement is enforceable as part of the court's decree if it appears in the recitals and is

approved by the court." *Id.* (citation omitted) (holding that trial court may enforce by contempt failure to pay over portion of retirement benefits as part of property division contained in agreed divorce decree); *accord* TEX. FAM. CODE § 8.059(a)(2) ("The court may enforce by contempt against the obligor . . . an agreement for periodic payments of spousal maintenance under the terms of this chapter voluntarily entered into between the parties and approved by the court.").

When suit is filed to enforce payment under a prior judgment, the "argument . . . that all or a portion of the judgment [has] been paid" is "an affirmative defense, as required by Tex. R. Civ. P. 94." *Matrix, Inc. v. Provident Am. Ins. Co.*, 658 S.W.2d 665, 667 (Tex. App.—Dallas 1983, no writ). "[P]ayment is [a] defense on which the defendant has the burden of proof." *Southwestern Fire & Cas. Co. v. Larue*, 367 S.W.2d 162, 163 (Tex. 1963); *accord Cadle Co. v. Regency Homes, Inc.*, 21 S.W.3d 670, 675 (Tex. App.—Austin 2000, pet. denied). In this case, the evidence overwhelmingly shows that Gary clearly failed to meet his burden of proof and the trial court's finding otherwise must be reversed.

Gary turned over to Sandra's prior counsel all the evidence of payment that he had. This included carbon copies of checks, deposit slips,

11

cancelled checks and signed receipts for cash payments. (RR 2:47, 3:34-35). Sandra took these and listed each and every check number, direct deposit into her account and signed cash receipt. (P. Ex. 6:1-5). During his testimony Gary referred to a note book full of carbon check copies that he did not introduce into evidence, (RR 3:3-34), but he never even hinted that Sandra had failed to accurately reflect all the documents he had turned over to her counsel in her evidence to the trial court.

Gary first testified that he believed that the carbon copies of the checks added up to the correct amount of spousal maintenance. (RR 3:34). But whether or not the carbons added up to the correct amount is the wrong question, because the carbon copies of the checks by themselves are not proof of anything. Although research has not revealed any Texas case that squarely decides the issue of whether carbon check copies prove payment, the court in *Ware v. State Dept. of Soc. & Health Services*, 157 Wash. App. 1071 (2010) held "that a carbon copy of a check duplicate, without more, establishes only the writing of a check, but not the fact that the check was negotiated or that any payment has occurred through the banking system."

Gary never testified that he gave each check represented by a carbon copy to Sandra or that she negotiated all the checks that were represented by a carbon copy. Rather, Gary simply made some blanket statements that he didn't believe he owed Sandra any money and had paid what he believed he owed her (3:44-45, 52). Accordingly, the carbon copies of the checks are no evidence of payment and the trial court's finding that all payments have been made should be reversed.

This would be true even if the carbon copies constituted some evidence of payment. Taking every payment for which there was some proof along with all the carbon copies still produces payments totaling less than the $22,500.00 Gary was ordered to pay undere the decree. The uncontested evidence shows that there were unsupported carbon copies of checks totaling $1,600.00 in 2001, $2,820.00 in 2002 and $150.00 in 2003, for a total of $4,570.00. (P. Exh. 6:1-3). Adding this to the total of $15,097.00 in payments that are supported by evidence produces total payments of only $19,667.00, which is $2,833.00 less than what was ordered to be paid.

Accodingly, the evidence is clearly insufficient to support the trial court's finding that Gary paid all of the spousal maintenance payments due. Without contradiction Gary testified that he produced all the

documents for his spousal maintenance payments to Sandra's counsel. Without contradiction Sandra put into evidence a detailed listing for each payment claimed by Gary. Even including the check carbon copies, which are no evidence of payment, the total amount of payments is still less than what the trial court ordered Gary to pay in spousal maintenance. Under the evidence in this case the trial court's finding that Gary paid all of the spousal maintenance simply has no evidence to support it and is clearly wrong. This Court should therefore reverse the trial court's judgment on Sandra's claims for spousal maintenance.

## PRAYER

Based upon the foregoing, Sandra respectfully requests the Court to reverse the trial court's take nothing judgment on her claims for unpaid spousal maintenance and remand for further proceedings on those claims and any attorney's fees for those claims.

Respectfully submitted,

**RAY & WOOD**

By: _____
Doug W. Ray
State Bar No. 16599200

14

2700 Bee Caves Road, Suite 200
Austin, Texas 78746
(512) 328-8877 (Telephone)
(512) 328-1156 (Telecopier)
dray@raywoodlaw.com
**ATTORNEYS FOR APPELLANT**
**SANDRA KAY HARGROVE**

### APPELLATE RULE 9.4(I)(3) CERTIFICATE OF COMPLIANCE

Counsel hereby certifies that this brief was computer generated using 14-point Book Antiqua typeface and that this brief, excluding those portions enumerated in Appellate Rule 9.4(i)(1), contains 2,800 words, based upon the word count of the computer program used to generate the brief.

_____
Doug W. Ray

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Appellant's Brief was served through the electronic filing manager or by email to the following:

Robert O. Harris, III
404 North Main
Belton, Texas 76513
buck@buckharrislaw.com
**ATTORNEY FOR APPELLEE**

on this the 21st day of September, 2015.


_____
Doug W. Ray

# In the Court of Appeals
# For the Third Judicial District
# Austin, Texas

**SANDRA KAY HARGROVE,**

**Appellant,**

**v.**

**GARY M. HARGROVE**

**Appellee.**

**APPENDIX TO APPELLANT'S BRIEF**

# APPENDIX TABLE OF CONTENTS

| TAB | DOCUMENT |
|-----|----------|
| 1 | Final Judgment |
| 2 | Findings of Fact and Conclusions of Law |

# TAB 1

ORIGINAL

NO. 186,223-A

| | | |
|---|---|---|
| SANDRA KAY HARGROVE | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 27TH JUDICIAL DISTRICT |
| | § | |
| GARY M. HARGROVE | § | BELL COUNTY, TEXAS |

## ORDER ON PETITION FOR ENFORCEMENT

On March 24, 2015 the Court considered the Petition for Enforcement of Sandra Kay Hargrove, Petitioner.

*Appearances*

Petitioner, Sandra Kay Hargrove, appeared in person and through attorney of record, Andrea Sheinbein, and announced ready for trial.

Respondent, Gary M. Hargrove, appeared in person and through attorney of record, Robert O. Harris, III, and announced ready for trial.

*Jurisdiction*

The Court, after examining the record and the evidence and argument of counsel, finds that it has jurisdiction over the subject matter and the parties in this case. All persons entitled to citation were properly cited.

*Record*

The record of testimony was duly reported by the court reporter for the 27th Judicial District Court.

*Jury*

SCAN
4-9-15

A jury was waived, and all questions of fact and of law were submitted to the Court.





---

Order On Petition For Enforcement

Page 1

98

*Order Subject of Enforcement*

The Court finds that on July 17, 2001 an order was rendered providing in relevant part as follows:

All right, title, and interest in and to fifty percent (50%) of the IRA Mutual Funds to date of divorce after deduction for the payments of community debts, penalties and taxes.

The Court finds that Petitioner has agreed to provide Spousal Maintenance to Respondent. IT IS THEREFORE ORDERED that Spousal Maintenance is paid as follows: Amount - Gary M. Hargrove shall pay to Sandra Kay Hargrove the amount of $625.00, beginning thirty days after this Decree of Divorce is signed by the Court and continuing on the same day of each month thereafter for a period of thirty-six months.....

*Findings*

The Court finds that the spousal maintenance/alimony described on Page 4 to Page 6 of the Agreed Final Decree of Divorce that was rendered in this Court on July 17, 2001 is contractual alimony and not Spousal Maintenance as described in Chapter 8 of the Texas Family Code. The Court finds that Gary M. Hargrove has complied with the terms of the contractual alimony as described on pages 4 to 6 in the Agreed Final Decree Of Divorce and that all contractual alimony has been paid to Sandra Kay Hargrove.

The Court further finds that the IRA Mutual Funds have been divided and paid.

The Court further finds that all costs of court are to be paid by the party incurring the cost.

*Relief Denied*

IT IS ORDERED that all relief requested is hereby denied and that all requests for attorney's fees, court costs and contempt against Gary M. Hargrove are also denied.

---

SIGNED on        APR 0 7 2015       .

<u>JUDGE PRESIDING</u>

# TAB 2

NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA

FILED
2015 JUL 14 AM 10: 40

NO. 186,223-A

| | | |
|---|---|---|
| SANDRA KAY HARGROVE | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 27TH JUDICIAL DISTRICT |
| | § | |
| GARY M. HARGROVE | § | BELL COUNTY, TEXAS |

## Findings of Fact and Conclusions of Law

In response to the request of Petitioner, Sandra Kay Hargrove, the Court makes and files the following as original Findings of Fact and Conclusions of Law in accordance with rules 296 and 297 of the Texas Rules of Civil Procedure.

*Findings of Fact – Divorce Decree*

1. Sandra Kay Hargrove, Petitioner, and Gary M. Hargrove, Respondent, were divorced on July 17, 2001.

2. The Agreed Final Decree of Divorce awarded Sandra Kay Hargrove All right, title, and interest in and to fifty percent (50%) of the IRA Mutual Funds to date of divorce after deduction for the payments of community debts, penalties and taxes.

3. The Agreed Final Decree of Divorce ordered Gary M. Hargrove to make payments of Spousal Maintenance to Sandra Kay Hargrove the amount of $625.00, beginning thirty days after this Decree of Divorce is signed by the Court and continuing on the same day of each month thereafter for a period of thirty-six months.

*Findings of Fact - Division of the Marital Estate*

4. The Court finds that the IRA Mutual Funds have been divided and paid to Sandra Hargrove by Gary Hargrove in accordance with the terms of the Final Decree of Divorce.

*Findings of Fact – Spousal Maintenance*

---

**Findings of Fact & Conclusions of Law**                                    Page 1 of 2

5.      The Court finds that the spousal maintenance/alimony described on Page 4 to Page 6 of the Agreed Final Decree of Divorce that was rendered in this Court on July 17, 2001 is contractual alimony and not Spousal Maintenance as described in Chapter 8 of the Texas Family Code. The Court finds that Gary M. Hargrove has complied with the terms of the contractual alimony as described on pages 4 to 6 in the Agreed Final Decree Of Divorce and that all contractual alimony has been paid to Sandra Kay Hargrove.

*Findings of Fact as Conclusions of Law*

6.      Any finding of fact that is a conclusion of law shall be deemed a conclusion of law.

*Conclusions of Law - Division of Marital Estate - Reimbursement*

7.      The request to enforce the Final Decree of Divorce as plead are denied in accordance with the findings of the Court that Respondent, Gary Hargrove, has complied with the terms of the Final Decree of Divorce and no monies are owed to satisfy the obligations contained in the prior order.

SIGNED on _____**JUL 1 3 2015**_____

_____
JUDGE PRESIDING

PAGE 03/03                                      2549392121    10:51    07/13/2015
148