**Clifford HOLLAND, Appellant,**

v.

**Carrie HOLLAND, Appellee.**

No. 05–09–01201–CV.

Court of Appeals of Texas, Dallas.

Jan. 6, 2012.

Clifford Holland, Dallas, TX, pro se.

David R. Weiner, Weiner Law Firm, Dallas, TX, for Appellant.

Ronald E. Massingill, Law Offices of Ron Massingill, P.C., Thomas J. O'Brien, Law Office of Thomas J. O'Brien, Dallas TX, for Appellee.

Carrie Holland, Dallas, TX, pro se.

Before Justices LANG, MURPHY, and MYERS.

## OPINION

Opinion By Justice MYERS.

Clifford Holland appeals the trial court's orders on the parties' motions for clarification of the divorce decree between him and Carrie Holland. Appellant brings five issues asserting the trial court erred (1) by failing to grant offsets to appellant's contractual alimony obligation; (2) by signing an income-withholding order for contractual alimony after the court's plenary power had expired; (3) by signing an income-withholding order when appellee had not performed the conditions precedent in the divorce decree; (4) by signing an income-withholding order for spousal maintenance instead of an income-withholding order for contractual alimony; and (5) by signing a nunc pro tunc order of income withholding for contractual alimony without notice to the parties or a hearing. We reverse the trial court's judgment in part, vacate the trial court's income-withholding orders, and remand the cause to the trial court for further proceedings.

## BACKGROUND

The parties were divorced in February 2008 under a divorce decree incorporating the terms of their mediated settlement agreement of October 2007. Pursuant to the decree, appellant was to transfer to appellee funds from a 401k account, which were worth $459,145 at the time of the signing of the mediated settlement agreement. Appellee was then required to pay eight specified liabilities totaling $344,002, plus taxes due on the funds appellee received from the 401k account.[1] Besides the taxes on the 401k account, these liabilities included four credit card accounts, a bank loan, and appellee's attorney's fees.

The parties also agreed that appellant would pay contractual alimony of $5000 per month for forty-five months up to a maximum of $225,000 "to provide a continuing measure of support for [appellee] after divorce." The decree contained a provision permitting appellant to offset against the alimony payments any amounts of the eight liabilities that appellee did not pay and that appellant was required to pay. The decree also stated that once appellee paid the eight liabilities in full, then the Order of Income Withholding for Contractual Alimony would be served on appellant's employer and the withheld earnings forwarded to appellee "in accordance with the Order of Income Withholding for Contractual Alimony that was signed by this Court." No income-withholding order for contractual alimony was signed when the trial court signed the divorce decree.

After the decree was signed, the funds in the 401k account were transferred to appellee. However, according to appellee's counsel's statement to the trial court, appellee received only $375,100, not $459,145, a difference of $84,045 and 18.3 percent, because of a market decline between the signing of the mediated settlement agreement in October 2007 and the signing of the divorce decree in February 2008.

Appellant made payments on some of the eight liabilities, and he offset those payments against the alimony payments. Appellee then paid the entire amount out-

---

1. Appellee's counsel told the trial court that the taxes on the 401k account were $125,000.

standing on six of the liabilities. However, on two of the liabilities, credit cards in appellee's name only, appellee negotiated reductions of $41,574 on the American Express account and $34,734 on the Bank of America account, which totaled $76,308 in reductions. Bank of America sent appellee a letter stating the account was fully settled and would be reported to the consumer reporting agencies "as a settled account, legally paid in full for less than the full balance." Nationwide Credit, Inc. sent appellee a letter stating, "The above American Express account was settled with our Agency for the amount of $19[,]600 on 05/16/2008."

In August 2008, both parties filed motions to clarify the divorce decree. Appellant requested that his alimony payments be offset by the $76,308 reduction in the debt appellee paid. He also asked that the court deny appellee's request for a withholding order because appellee had not complied with the decree's condition precedent for the withholding order that the eight liabilities "are paid in full." Appellant also brought a claim for breach of contract, alleging appellee had breached the mediated settlement agreement by failing to pay the liabilities in the amounts set forth in the agreement. Appellee asserted that appellant had failed to make six of the alimony payments and requested the court hold appellant in contempt for failing to pay and impose a withholding order.

On July 10, 2009, the trial court ruled on the parties' motions and determined: (a) appellant had agreed to pay 45 payments in the amount of $5000 for a total amount of $225,000; (b) appellant was entitled to credits for debt and car-repair payments of $20,000; (c) appellant had paid alimony of $23,070; (d) the combined alimony and

credits equaled $43,070; and (e) appellant still owed $181,930 in contractual alimony. The court then ordered that appellant make payments of $5000 per month until the sum of $181,930 has been paid in full. The court stated in the order it "has signed the Order of Income Withholding for Contractual Alimony on this date." However, the document the court signed was styled, "Order of Income Withholding for Spousal Maintenance." Appellant timely filed a motion for new trial, which was overruled by operation of law, and a notice of appeal from the July 10, 2009 order.

On February 5, 2010, after the court's plenary power over the July 10, 2009 order had expired and while the case was pending on appeal, the trial court, without a motion and without notice to the parties, signed a "Nunc Pro Tunc Order of Income Withholding for Contractual Alimony."

## CONTRACTUAL ALIMONY

In his first issue, appellant contends the trial court erred in failing to offset his alimony payments by the amount of the liabilities appellee had agreed, but failed, to pay. In the third issue, appellant contends the trial court erred in signing an income-withholding order because appellee had not complied with the condition precedent of paying the eight liabilities in full. In the second, fourth, and fifth issues, appellant contends the trial court lacked authority and jurisdiction to enter the withholding orders.

### Contract Interpretation

 Resolution of these issues involves interpretation of the parties' mediated settlement agreement as incorporated in the divorce decree.[2] When construing a

---

2. The copies of the mediated settlement agreement in the record are incomplete, lack-

ing pages 7, 8, and 9. It appears that the agreement concerning the contractual alimo-

contract, our primary goal is to determine the parties' intent as expressed in the terms of the contract. *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex.2009); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). Contract language that can be given a certain or definite meaning is not ambiguous and is construed as a matter of law. *Chrysler Ins. Co.*, 297 S.W.3d at 252; *Coker*, 650 S.W.2d at 393. A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker*, 650 S.W.2d at 393; *United Protective Servs., Inc. v. W. Vill. Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex. App.-Dallas 2005, no pet.). We review an unambiguous contract de novo. *Chrysler Ins. Co.*, 297 S.W.3d at 252. When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Coker*, 650 S.W.2d at 394; *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 56 (Tex.App.-Dallas 2006, pet. denied).

### Divorce Decree

The relevant provisions of the divorce decree state,

IT IS FURTHER ORDERED Carrie Holland is to receive from the USB 401(k) the gross amount due her pursuant to this agreement (which was in the amount of $459,145.00 at the time of the execution of the Mediated Settlement Agreement in this matter) and immediately upon her receipt of [it] is ordered to pay the following liabilities:

a. Bank of America credit card acct. # . . . in the amount of $56,734.00;

b. CitiBank credit card acct. # . . . in the amount of $45,000.00;

c. Bank of America credit card account # . . . in the amount of $11,336.00;

d. Wells Fargo loan, acct. # . . . in the amount of $99,758.00;

e. Attorney's fees payable to Laurence A. De Plaza in the amount of $40,000.00;

f. Attorney's fees payable to Tom O'Brien in the amount of $30,000.00;

g. American Express credit card acct. # . . . in the amount of $61,174.00; and

h. The total amount of taxes due on the funds received from the USB 401(k) on behalf of Carrie Holland.

### Alimony

#### Purpose and Intent of Article

The Court finds that the parties have agreed that it is the mutual desire of the parties to provide a continuing measure of support for Carrie Holland, Receiving Party, after divorce. . . .

#### Terms, Conditions, and Contingencies

The Court finds that the parties have agreed, and IT IS ORDERED AND DECREED that Clifford Holland will pay to Carrie Holland forty-five (45) consecutive monthly payments of $5,000.00 per month as alimony. These payments will be payable monthly, on or before the tenth day of each month, with the first payment being due and payable on the first day after the date this Agreed Decree of Divorce has been signed by the Presiding Judge in this case and then on the 10th of each month thereafter until all payments have been

---

ny and the withholding order must be on one of the missing pages. The parties do not complain that the divorce decree fails to follow the mediated settlement agreement, and we will assume, for purposes of this appeal, that they are consistent.

made in accordance with this Decree of Divorce.

. . . .

The parties have agreed and it is therefore ORDERED that in the event Carrie Holland does not pay the liabilities listed on Schedule D, item W–1 (a) through (h), and if Clifford Holland is then required to pay any of said liabilities, then Clifford Holland shall be entitled to take a dollar-for-dollar offset against his alimony obligation for payment of these liabilities.

*Withholding Order*

IT IS ORDERED AND DECREED that once the liabilities listed on Schedule D, item W–1 (a) through (g) are paid in full by Carrie Holland as more fully set forth herein, then the Order of Income Withholding for Contractual Alimony shall be served upon the employer of Clifford Holland, and the unpaid monthly alimony obligation shall be withheld from the earnings of Clifford Holland and forwarded to Carrie Holland in accordance with the Order of Income Withholding for Contractual Alimony that was signed by this Court.

### Offsets

In his first issue, appellant contends the trial court erred by failing to offset his alimony obligations by the difference in the amount of the eight liabilities set forth in the divorce decree and the amount appellee actually paid to resolve those liabilities. The decree ordered appellee to pay "Bank of America credit card … in the amount of $56,734.00," but she resolved the liability for $22,000. The decree ordered her to pay "American Express credit card … in the amount of $61,174.00," and she settled that account for $19,600. Appellant argues he was entitled to an offset of $76,308.

■ The decree provided that appellant would receive an offset if appellee failed to pay the liabilities, *and* if appellant "[was] then required to pay any of said liabilities." It is undisputed that appellant was not required to pay, and did not pay, any of the $76,308 that appellee failed to pay on those two liabilities. Accordingly, appellant is not entitled to an offset under the terms of the divorce decree.

■ Appellant appears to assert that, notwithstanding the offset provision in the divorce decree, he is entitled to offsets under common law contract principles. However, appellant does not identify or explain these common law contract principles or cite any authority in support of them. This assertion is not sufficiently briefed for us to review it. *See* TEX.R.APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

We conclude appellant has failed to show the trial court erred by not offsetting his alimony payments by the $76,308 that appellee failed to pay on two of the liabilities. We overrule appellant's first issue.

### Income–Withholding Orders

*"Pay in Full"*

In his third issue, appellant contends the court erred in signing an income-withholding order because appellee had failed to meet the condition precedent that she pay "in full" the eight liabilities. Appellant argues appellee did not pay the Bank of America and American Express liabilities in full because she negotiated settlements of those accounts for less than the amounts set out in the divorce decree.

■ A liability is "paid in full" when the payor has fully extinguished the liability, regardless of the amount paid. *See*

*First Heights Bank, FSB v. Gutierrez,* 852 S.W.2d 596, 605 (Tex.App.-Corpus Christi 1993, writ denied) ("Payment is defined as the discharge of an obligation by the actual or constructive delivery of money or its equivalent by the obligor or by someone for him for the purpose of extinguishing the obligation, wholly or partially, and the acceptance of it by the obligee."); *Ormsby v. State Life Ins. Co.,* 133 S.W.2d 797, 800 (Tex.Civ.App.-Dallas 1939, no writ) ("The doctrine is fundamental that, payment extinguishes the debt. And, as a consequence, the extinguished debt bears no interest." (Citations omitted)); BLACK's LAW DICTIONARY 1165 (West 8th ed. 2004) (defining "payment" as "Performance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation."); 58 TEX. JUR. 3D *Payment* § 3 (2006) ("The payment of a debt implies a capacity and willingness on the part of the obligee to accept an unconditional offer of payment in full discharge."). When Bank of America and the owner of the American Express obligation accepted appellee's payments in full discharge of the obligations, those liabilities were "paid in full," and appellee had complied with the condition precedent that she pay the liabilities "in full." We overrule appellant's third issue.

### July 2009 Income–Withholding Order

In his second issue, appellant contends the trial court lacked jurisdiction to enter income-withholding orders after the court's plenary power over the 2008 divorce had expired. Appellee argues the trial court had authority to issue income-withholding orders as enforcement orders of the 2008 divorce decree. *See* TEX.R. CIV. P. 308. Appellant, however, argues the signing of an income-withholding order after the signing of the divorce decree would modify the divorce decree.

■ Trial courts have authority under their inherent authority and Texas Rule of Civil Procedure 308 to enforce their orders and decrees. *See id.; Arndt v. Farris,* 633 S.W.2d 497, 499 (Tex.1982); *Katz v. Bianchi,* 848 S.W.2d 372, 374 (Tex.App.-Houston [14th Dist.] 1993, no writ). Enforcement orders must be consistent with the original judgment and "must not constitute a material change in substantial adjudicated portions of the judgment." *Katz,* 848 S.W.2d at 374.

■ The divorce decree specifically provided that the contractual alimony provisions would be enforced through a withholding order. Appellant argues the signing of a withholding order would modify the divorce decree because the decree stated that the court had already signed the withholding order. Appellant acknowledges that "[n]o such order of income withholding, however, was signed by the trial court at that time." In this case, the entry of a withholding order for contractual alimony after the court's plenary power had expired would not modify the divorce decree because the decree expressly provided for enforcement through such an order. The fact that the decree incorrectly recited that such an order had been signed did not make the later issuance of a withholding order a modification of the decree.

Appellant cites *Kee v. Kee,* 307 S.W.3d 812 (Tex.App.-Dallas 2010, pet. denied), in support of his argument. In that case, a husband and wife agreed in a partition-and-exchange agreement that if they divorced, then the husband would pay alimony and child support of $3400 per month. *Id.* at 813. The subsequent divorce decree ordered the husband to pay child support and alimony for a combined total of $3400. The wife later applied for a writ of withholding regarding the alimony payments under chapter 8 of the Family Code. *Id.;*

*see* Tex. Fam.Code Ann. § 8.101–.305 (West 2006). The trial court denied the writ of withholding. This Court affirmed the trial court's denial of the writ of withholding because the writ was to enforce a spousal-maintenance obligation under chapter eight of the Family Code, and the alimony payments in *Kee* were for contractual alimony. *Kee,* 307 S.W.3d at 814–15. We observed that the parties' agreement "did not provide for enforcement by income withholding." *Id.* at 816. As in *Kee,* the alimony in this case was for contractual alimony, not spousal maintenance under chapter 8 of the Family Code. However, unlike the situation in *Kee,* the agreement in this case provides for enforcement by income withholding. Accordingly, *Kee* is distinguishable.

We conclude the trial court did not lack jurisdiction to enter an order of income withholding for contractual alimony after its plenary power over the divorce decree expired. We overrule appellant's second issue.

■■■ We next consider whether the trial court erred in the orders it issued. In his fourth issue, appellant contends the trial court erred in signing the July 10, 2009 Order of Income Withholding for Spousal Maintenance because the order modified the trial court's judgment. Although the trial court, in this case, had authority to enforce the divorce decree through an order of income withholding for contractual alimony, the order it signed on July 10, 2009 was for income withholding for spousal maintenance. Spousal maintenance is paid when one spouse has a statutory duty to continue to support the other spouse after the divorce in the circumstances set forth in the statute. *See* Tex. Fam.Code Ann. §§ 8.051–.056 (West Supp. 2011). Spousal maintenance may be enforced through means not available for breach of contract, including contempt.

*See id.* § 8.059; *see also id.* § 9.012(b) (West 2006) ("The court may not enforce by contempt an award in a decree of·divorce ... of a sum of money ... in the nature of debt...."). The trial court may not issue an order of income withholding for spousal maintenance to enforce a contractual alimony obligation. *See Kee,* 307 S.W.3d at 816.

As discussed above, an order enforcing a judgment must be consistent with the original judgment and must not constitute a material change in the judgment. *Katz,* 848 S.W.2d at 374. The divorce decree permitted enforcement through an Order of Income Withholding for Contractual Alimony. The court's Order of Income Withholding for Spousal Maintenance was not consistent with the divorce decree and constituted a material change in the decree. We sustain appellant's fourth issue.

■■■ In his fifth issue, appellant contends the court erred in issuing the February 5, 2010 Nunc Pro Tunc Order of Income Withholding for Contractual Alimony because there was no motion, notice, or hearing with respect to the order. No party had moved for the nunc pro tunc order, and the trial court did not give the parties any notice before entering the nunc pro tunc order. Texas Rule of Civil Procedure 316 provides,

> Clerical mistakes in the record of any judgment may be corrected by the judge in open court according to the truth or justice of the case after notice of the motion therefor has been given to the parties interested in such judgment, as provided in Rule 21a, and thereafter the execution shall conform to the judgment as amended.

Tex.R. Civ. P. 316. A judgment nunc pro tunc entered without notice to the parties as required by rule 316 is a nullity. *See Money of the United States in the Amount*

*of $8,500 v. State,* 774 S.W.2d 788, 791 (Tex.App.-Houston [14th Dist.] 1989, no writ); *W. Tex. State Bank v. Gen. Res. Mgmt.,* 723 S.W.2d 304, 307 (Tex.App.-Austin 1987, writ ref'd n.r.e.). We conclude the trial court erred in issuing the February 5, 2010 Nunc Pro Tunc Order of Income Withholding for Contractual Alimony without notice to the parties as required by rule 316. We sustain appellant's fifth issue.

## CONCLUSION

We conclude the trial court had jurisdiction to sign orders of income withholding for contractual alimony to enforce the divorce decree. We also conclude the trial court did not err in denying appellant further offsets against his contractual alimony obligation. However, we conclude the trial court erred in signing the July 10, 2009 and February 5, 2010 income-withholding orders. Accordingly, we reverse the trial court's judgment as to the July 10, 2009 and February 5, 2010 income-withholding orders, we vacate the trial court's entry of those orders, and we affirm the trial court's judgment in all other respects. We remand the cause for further proceedings consistent with this opinion.